UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| GINA JANG and | ) |
| HOSEONG CHANG, | ) |
| | ) Case No. 12-cv-00782 |
| Plaintiffs, | ) |
| v. | ) Judge John W. Darrah |
| | ) |
| WOO LAE OAK, INC. CHICAGO; | ) |
| JIN K. JANG; CHIYOON KIM; | ) |
| IL KWON JEONG; KEI WOOK LEE; | ) |
| and KAYLYN KIM, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Gina Jang and Hoseong Chang, have brought this action against Defendants, Woo Lae Oak, Inc. Chicago, Jin K. Jang, Chiyoon Kim, Il Kwon Jeong, Kei Wook Lee, and Kaylin Kim, alleging that Defendants failed to pay Plaintiffs minimum wages and overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. §201, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1. (Pls.' Compl. ¶¶ 2-3.) At issue here is Defendant Woo Lae Oak, Inc. Chicago's Motion to Disqualify Plaintiffs' Counsel, based on the counsel's association with the law firm, Mirae Law.

### BACKGROUND

The following facts are taken from the instant motion, the parties' briefs and submitted exhibits. Defendant Woo Lae Oak, Inc. Chicago ("WLO") is a Korean restaurant in Chicago and part of a larger Korean restaurant chain that has branches throughout the world. (Defs.'s Mot., Exh. A.) Defendant Kei Wook Lee is either the general manager or president of WLO or, perhaps, both. Defendant WLO has moved to disqualify Plaintiffs' counsel, based on Attorney Amy Elizabeth Paluch Epton's association with Mirae Law ("Mirae"), a law firm which serves

Chicago's Korean population.

At the outset, it is important to note there is a dispute between the parties as to whether Mirae represented Defendant WLO or Defendant Lee. Defendant WLO, not Lee, is the defendant moving to disqualify Plaintiffs' counsel; Defendant WLO characterizes itself as a "client of Mirae Law Group since as [*sic*] least June, 2011." (Def.'s Mot. ¶ 2.) In contrast, Plaintiffs contend that Lee previously retained Mirae in his individual capacity, not on behalf of Defendant WLO.[1]

According to Jane H. Park, a principal attorney at Mirae, Lee retained Mirae on April 20, 2011, in order to renew Lee's E-2 temporary worker visa. (Park Declaration, Dkt No. 59 ("Park Decl.") ¶ 7.) Defendant WLO was the petitioner on Lee's application. (Defs.'s Mot., Exh. A.) Mirae attorney Ryan Kim, who is the only Mirae Law attorney who works on immigration matters, worked on Lee's application. (Defs.'s Mot., Exh. A; Park Decl. ¶ 12.) On June 20, 2011, Kim sent Lee's E-2 application to the U.S. Embassy in Seoul, Korea. (Defs.'s Mot., Exh. A.) Lee obtained the E-2 visa in July or August of 2011; according to Mirae, its representation of Lee terminated at that time. (Park Decl. ¶ 14.)

In April 2012, after this lawsuit was filed, Kim met with Lee for approximately one hour regarding the procedure for withdrawing immigration sponsorship of an employee who worked for Defendant WLO. Kim drafted a letter for Lee to send to the Immigration Service. Lee paid

---

[1] This discrepancy may be relevant in light of Plaintiffs' significant difficulty in serving summons on Lee. On February 1, 2013, Plaintiffs filed a motion for a Special Order to serve Lee via Defendant WLO's then counsel, Peter H. Kim. On February 8, 2013, Kim filed a motion to withdraw as Defendant WLO's counsel, having been discharged by Defendant WLO. On February 20, 2013, the Court granted Plaintiffs' motion to serve Lee via Kim, as well as granted Kim's motion to withdraw. Lee has not entered an appearance yet and remains unrepresented.

Kim $200 for that consultation, and no further action was taken. (*Id.* ¶¶ 29, 30.)

In approximately October 2011, Plaintiff Gina Jang consulted Park regarding Defendant WLO's failure to pay wages to her or her brother, Plaintiff Hoseong Chang, for approximately two years. (*Id.* ¶ 15.) Park ran a check in Mirae's database and discovered the representation of Lee in connection with the E-2 visa. Park then referred Plaintiffs to Epton "in her individual capacity." (*Id.* ¶ 17.) Epton has performed contract work on a "sporadic, as needed basis" as an "of counsel" attorney for Mirae. (*Id.* ¶ 4.) Epton did not work on Lee's E-2 visa or the letter drafted by Kim in April 2012.

Epton attempted a settlement with Defendants, but after those negotiations proved unsuccessful, Epton brought the case to another firm with which she is employed, Whitfield, McGann & Ketterman ("WG&K"). (Epton Declaration, Dkt No. 58 ¶¶ 8-10.) In February of 2012, this suit was filed on behalf of the Plaintiffs by Epton and WG&K. (Compl. at 8.)

**LEGAL STANDARD**

Upon a motion to disqualify, the district conducts a two-step analysis: first, whether an ethical violation has occurred; and second, whether disqualification is the proper remedy. *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). To prevail, the movant bears a heavy burden and must show facts necessitating disqualification. *Id.* Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir. 1993) (internal quotations and citations omitted); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment."). "In addition to creating unnecessary delay, disqualification often deprives a

3

party of his chosen legal advisor." *Guillen*, 956 F. Supp. at 1421.

## ANALYSIS

### *Current Client Inquiry*

Defendant WLO argues that it is a current client of Mirae and, that, based on Epton's "of counsel" position with Mirae, Epton and her other associated firm, WG&K, are barred from representing Plaintiffs. Plaintiffs respond that Defendants are not current clients of Mirae, and that furthermore, Epton is not Defendants' counsel because she is only "of counsel" with Mirae.

Northern District of Illinois Local Rule 83.51.7 states in relevant part:

> A lawyer shall not represent a client if the representation of the client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after disclosure.

*See* Conflict of Interest, L.R. § 83.51.7. Local Rule 83.51.10, which pertains to imputed disqualifications, also forbids any lawyer "associated with a firm from representing a client which another lawyer associated with the same firm could not."

As a preliminary matter, Epton, as an "of counsel" attorney with Mirae, is associated with Mirae for purposes of Local Rule 83.51.10. *See* Comm. Comments to LR 83.51.10 ("the term 'associated . . . shall be read to cover all forms of association between the lawyer and the firm, including . . . of counsel."). As such, she is prohibited from representing any client when another lawyer at Mirae could not. Consequently, the inquiry must turn to whether any of the Defendants are a current client of Mirae.

Defendant WLO relies on *SWS Financial Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392 (N.D. Ill. 1992), for the proposition that although several months may pass between "projects" for a given client, that client nonetheless remains a current client of the law firm. In

4

*SWS Financial*, there existed a lengthy and continuous relationship between the client and the firm, in which the firm provided general services concerning many different matters. *Id*. at 1398. The court found that the client was entitled to "assume" that the law firm would continue to be the client's attorney and, therefore, was a current client when the firm began to represent a party adverse to the client's interests. The court further noted that "once established, a lawyer-client relationship does not terminate easily" and that "[s]omething inconsistent with the continuation of the relationship must transpire in order to end the relationship." *Id.* at 1398.

This case presents a different situation than in *SWS Financial*. Mirae represented Lee for a specific and limited matter, obtaining his E-2 visa. According to Mirae, that representation "terminated" in July or August 2011 when Lee received the visa. (Decl. Jane H. Park ¶ 14.) The following year, in April 2012, Mirae Attorney Kim had a brief consultation with Lee that last approximately one hour, in which Lee asked about withdrawing the immigration sponsorship of an employee. (*Id.* ¶¶ 28-29.) Kim drafted a sample letter for Lee and was paid $200, and no further action was taken. (*Id.* ¶¶ 30-31.)

Here, Defendant WLO has failed to support its Motion with any attestation; rather, it simply makes the conclusory statement that it is "currently" represented by Mirae. As mentioned above, it is not even clear that Defendant WLO was *ever* a client of Mirae; rather, Lee appears to have been Mirae's client. Further, there are no facts, nor even a suggestion, in the record that Epton participated in the limited work Mirae did on behalf of Lee. Defendant WLO has failed to factually demonstrate a current client relationship with Mirae.

*Substantial Relationship Test and Former Clients*

Since Lee does not appear to be a current client of Mirae, Defendant WLO must show

that "there is a substantial relationship between the subject matter of the prior and present representation." *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir. 1983). A "substantial relationship" exists where a lawyer "could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983). The district court undertakes a three-step inquiry in examining whether a substantial relationship exists between the past representation and the current representation:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*LaSalle Nat'l Bank*, 703 F.2d at 255-256; *see also Misiak v. Morris Material Handling, Inc.*, No. 07 CV 6330, 2008 WL 4874178, at *3 (N.D. Ill. July 10, 2008) (denying motion to disqualify law firm, even though that firm had represented an adverse party in the case for over thirty years in over three hundred matters, where there was no showing that any confidential information received was relevant to the pending matter).

Defendant WLO has failed to show that there is a "substantial relationship" between Mirae's representation of Lee and the current matter so as to warrant disqualification. Regarding the first step, the factual reconstruction of the previous relationship is that Mirae represented Lee for a period of approximately three to four months on the single matter of the E-2 visa. After the Complaint was filed in this action, Mirae conducted a one-hour consultation with Lee in April 2012.

Regarding the second step, Defendant WLO claims that during an interview conducted

between Mirae and Lee for purposes of obtaining an E-2 visa in 2011, information regarding Defendant WLO and its finances was clearly conveyed to the Mirae attorney, as such information is reflected in the letter written by Mirae, and that Mirae nevertheless obtained confidential information regarding Defendant WLO during that representation. However, the so-called confidential information referred to by Defendant WLO set out in Exhibit A to Defendant WLO's Motion to Disqualify contains specific WLO financial information published in a letter to the U.S. Embassy in Seoul, South Korea. Defendant WLO cannot reasonably claim that that information is confidential.

The third step asks whether any confidential information received is relevant to the issues "raised in the litigation pending against the former client." *Misiak*, 2008 WL 4874178, at *1. In *Misiak*, this Court found that the confidential information received by the challenged counsel in that case was not relevant to the issues raised in the pending litigation because: (1) the moving defendants had failed to identify any specific information that the challenged counsel had received which was relevant to the pending litigation, and (2) because, where the litigation in question was a workman compensation case, challenged counsel had no knowledge of the defendants' workman compensation program or procedures. *Id*. at *2.

Even if Mirae did receive confidential information about Lee, Defendant WLO has failed to demonstrate how it would be relevant to the present case, which involves claims for unpaid wages. It appears unlikely that any information provided to Mirae for purposes of obtaining an E-2 visa for Lee would be relevant to Plaintiffs' claims that the restaurant, Defendant WLO, failed to pay Plaintiffs. Thus, there is no sufficient basis to conclude there was a substantial relationship between Mirae's representation of Lee on his E-2 visa and the pending case.

*Whether Disqualification Is Appropriate*

However, even if an ethical violation had occurred, disqualification of Plaintiffs' counsel is not automatic. *See, e.g., SWS Financial Fund A*, 790 F. Supp. at 1400 (disqualification because of an ethical violation "is never automatic"); *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) ("disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary"); *Met. Life Ins. Co.*, No. 06 C 5812, 2009 WL 1439717, at *5 (N.D. Ill. May 18, 2009) ("it is well settled that disqualification does not flow automatically from a finding that a law firm violated a conflict of interest rule."); *Research Corp. Techs., Inc. v. Hewlett–Packard Co.*, 936 F. Supp. 697, 703 (D. Ariz. 1996) (finding an ethical violation but denying disqualification because "the nature of the ethical violation [was] not egregious" and "nothing indicate[d] that any confidential information related to the pending action has been received by" the counsel in question).

Here, Defendant WLO has failed to show that it would suffer any harm if Epton and WG&K continued to represent Plaintiffs. Mirae's limited immigration work for Lee was unrelated to Plaintiffs' claims that Defendants failed to pay them. Most importantly, there is absolutely no indication that Epton or WG&K received any confidential information regarding WLO, Lee, or any of the Defendants.[2] *See McCook Metals L.L.C. v. Alcoa*, No. 99 C 3856, 2001 WL 58959, at * 3 (N.D. Ill. Jan.18, 2001) (refusing to disqualify counsel where confidences had not been breached and the moving party failed to establish how it would have been harmed by the representation); s*ee also Research Corp. Tech., Inc.*, 936 F. Supp. at 703. Therefore,

---

[2] As mentioned above, the only confidential information that Defendant WLO has pointed to appears to have been published in a letter to the U.S. Embassy in Seoul, Korea.

Defendant WLO's Motion is denied.

*Sanctions*

Plaintiffs have requested leave to file a motion for sanctions. 28 U.S.C. § 1927 allows sanctions for "multipl[ying] the proceedings in any case unreasonably and vexatiously." Defendant WLO's Motion to Disqualify Counsel based on Epton's association with both Mirae and with WG&K was not so unreasonable so as to warrant sanctions. Plaintiffs' request is denied.

**CONCLUSION**

For the reasons stated above, Defendant WLO's Motion to Disqualify [51] is denied. Defendant WLO's Motion to Strike [65] is also denied.

Date: June 27, 2013

JOHN W. DARRAH
United States District Court Judge